UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: PAUL T. HOLLER, SR., and      :      No. 11-22090
       PHILOMENA B. HOLLER,      :      Chapter 7
          Debtors            :

# ORDER DENYING NOVA'S MOTION FOR RECONSIDERATION

AND NOW, this 13 day of December, 2011, upon my consideration of Debtors' two Motions To Avoid Judicial Liens Pursuant to 11 U.S.C. §522(f) and N.B.R. 4003(d) and 9014, both filed on August 9, 2011, and upon my previously granting the motions to avoid by my Order dated August 29, 2011, and upon NOVA filing, on September 6, 2011, its Motion for Reconsideration of Orders Entered August 29, 2011 Granting Debtors' Motions To Avoid Judicial Liens, and upon the hearing on NOVA's Motion for Reconsideration held on September 27, 2011, and upon my consideration of the stipulation of facts and the exhibits that the parties filed on October 6, 2011, and upon my consideration of the briefs that the parties filed on October 21, 2011, and upon the findings of fact, conclusions of law, and discussions stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that NOVA's Motion for

Reconsideration is HEREBY DENIED.

IT IS FURTHER ORDERED that my two Orders dated August 29,

2011, granting both of Debtors' Motions To Avoid are HEREBY RATIFIED,

RESTATED, AND RE-ENTERED.

IT IS FURTHER ORDERED that the Judgments (as defined in the

Memorandum Opinion) are HEREBY AVOIDED IN FULL.


BY THE COURT

RICHARD E. FEHLING
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: PAUL T. HOLLER, SR., and | : | No. 11-22090 |
| PHILOMENA B. HOLLER, | : | Chapter 7 |
| Debtors | : | |

# MEMORANDUM OPINION

# I.  INTRODUCTION

This contested matter would be easily resolved if Debtors sought to avoid the liens of two judgments against Debtor wife alone as an encumbrance on property held by Debtors as tenants by the entirety.  Likewise, it would be easily resolved if Debtors sought to avoid the liens of two judgments against Debtor husband alone as an encumbrance on property held by Debtors as tenants by the entirety.  In both instances, I could grant any such avoidance motion without much explanation or discussion.  I have before me, however, two motions by Debtors that, taken together, seek to avoid the liens of two judgments against Debtor wife and two identical judgments against Debtor husband.  The complicating circumstances are the origin and nature of the judgments:   The four judgments were entered pursuant to four separate, stand-alone, and independent guaranties of

1

two primary debts that a principal obligor owes to the creditor.  Two of the four

judgments (one against wife and one against husband) are for identical amounts;

the other two judgments (one against wife and one against husband) are for

different, but also identical, amounts; and the four judgments arise from four

individual, textually identical, but separate, guaranties of the same underlying

principal loans.

        The creditor made two loans to Debtors' company.  Debtors each

executed two separate but identical guaranties:  Same principal borrower; same

amounts; same terms; same underlying loans — but separate, individual, stand-

alone, independent guaranties.  Creditor confessed two separate judgments under

Pennsylvania law against Debtor wife, and two separate judgments against Debtor

husband, thereby producing four entirely individual and independent judgments

and judgment liens.

# II. **FACTUAL AND PROCEDURAL BACKGROUND**

## A. **FACTUAL UNDERPINNINGS OF THE LOAN TRANSACTIONS**

The parties have stipulated to what are limited, fairly simple facts in these two contested matters.[1] The following constitute my findings of fact:

1. NOVA Bank made two loans to B&P Carpet Installers, Inc., one in the amount of $45,000 on October 30, 2007 (Loan 53800511) (the "$45,000 B&P Loan"), and the second in the amount of $40,000, made on December 7, 2007 (Loan No. 53800550) (the "$40,000 B&P Loan"). Stipulation, ¶ 1.

2. On October 30, 2007, Debtor husband Paul Holler executed a commercial guaranty at the time[2] Loan No. 53800511 was made to B&P (the "Mr.

---

[1] The parties filed their Stipulation Submitted in Connection with Debtors' Motions To Avoid Judicial Liens (the "Stipulation") on October 6, 2011.

[2] The parties used the phrase "at the time" in Paragraphs 2, 3, 5, and 6 of the Stipulation. I have no way of knowing whether Mr. Holler actually executed his guaranties simultaneously (or practically simultaneously) with the B&P loan documents. The same uncertainly pertains to Mrs. Holler's guaranties. Alternatively, the B&P loan documents might have been signed on one date at one location and Mr. and Mrs. Holler's guaranties might have been signed on another date at another location. For the purpose of this Statement, however, I regard both Mr. and Mrs. Holler as having executed their guaranties as part of the same transactions and at the same effective dates and times as they executed the primary loan documents as officers and representatives of B&P. Mrs. Holler signed the B&P loan documents as President of B&P; Mr. Holler signed the loan documents as Vice President/Secretary of B&P. See Exh. "A" to the Stipulation.
    I raise the possibility of different dates and places because of the discrepancy between certain dates in another of the loan documents. See note 3, below.

3

Holler $45,000 Guaranty").   Stipulation ¶ 2 and Exh. "B."

3.  On October 30, 2007, Debtor wife Philomena Holler executed a

commercial guaranty at the time Loan No. 53800511 was made to B&P (the "Mrs.

Holler $45,000 Guaranty").   Stipulation ¶ 3 and Exh. "C."

4.  Also on October 30, 2007, NOVA extended a loan to Debtors in

the amount of $99,000 (the "$99,000 Loan"), secured by a mortgage on Debtors'

home (the "Mortgage").[3]   Stipulation ¶ 4 and Exh. "D."

5.  On December 7, 2007, Debtor husband Paul Holler executed a

commercial guaranty at the time Loan No. 53800550 was made to B&P (the "Mr.

Holler $40,000 Guaranty").   Stipulation ¶ 5 and Exh. "E."

6.  On December 7, 2007, Debtor wife Philomena Holler executed a

commercial guaranty at the time Loan No. 53800550 was made to B&P (the "Mrs.

Holler $40,000 Guaranty").   Stipulation ¶ 6 and Exh. "F."

7.  B&P and Debtors defaulted under the loan documents for both

---

[3] Although Paragraph 4 of the Stipulation does not identify what property is subject to the mortgage securing the $99,000 Loan, the Mortgage at Exh. "D" shows clearly that the mortgaged property is Debtor's home, 1618 Alex Court, Allentown (Salisbury Township), PA 18103.

I do not typically examine underlying documents about issues not specifically addressed by the parties, but this dispute has caused me to study the exhibits attached to the Stipulation. I note that the mortgage (and a number of ancillary loan documents that appear to have been contemporaneously executed) are dated October 30, 2007. The notary's acknowledgment of the mortgage, however, is dated October 31, 2007. Some appropriate basis for these mismatched dates may very well exist, but I note the requirement that a notary be present when the mortgage is executed, affixing his/her certification only when documents are executed before him/her. Fisher v. Advanta Finance Corp., (In re Fisher), 320 B.R. 52, 63-65 (E.D. Pa. 2005). Once again, because the parties do not expressly address the mis-matched dates in the Stipulation or their briefs, I will not regard it as material.

4

Loan Nos. 53800511 and 53800550.   Stipulation ¶ 7.

      8.  The following four judgments were entered by confession in the

Lehigh County Court of Common Pleas on August 3, 2010:

      a. NOVA v. Philomena Holler, No. 2010-N-783, in the amount

of $40,098.44 (the "Mrs. Holler $40,098.44 Judgment");

Stipulation ¶ 8 and Exh. "H."

      b.  NOVA v. Paul T. Holler, No. 2010-N-785, in the amount of

$40,098.44 (the "Mr. Holler $40,098.44 Judgment");

Stipulation ¶ 8 and Exh. "G."

      c.  NOVA v. Paul T. Holler, No. 2010-N-788, in the amount of

$41,076.31 (the "Mr. Holler $41,076.31 Judgment");

Stipulation ¶ 8 and Exh. "I." and

      d.  NOVA v. Philomena Holler, No. 2010-N-789, in the amount

of $41,076.31 (the "Mrs. Holler $41,076.31 Judgment").

Stipulation ¶ 8 and Exh. "J."

      9.  The Mr. Holler $40,098.44 Judgment (No. 2010-N-783)[4] and the

Mrs. Holler $40,098.44 Judgment (No. 2010-N-785) (together, the "$40,098.44

Judgments") relate to the balance owed on the NOVA loan to B&P in Loan No.

---

    [4] Paragraphs 9 & 10 of the Stipulation erroneously refer to the judgments' docket numbers as
beginning with "2000" rather than "2010," which is the correct date.  See Exhs. "G," "H," "I," and "J."

53800511 at the time the $40,098.44 Judgments were entered.  Stipulation ¶ 9.

10.  The Mr. Holler $41,076.31 Judgment (No. 2010-N-788) and the

Mrs. Holler $41,076.31 Judgment (No. 2010-N-789) (together, the "$41,076.31

Judgments") relate to the balance owed on the NOVA loan to B&P in Loan No.

53800550 at the time the $41,076.31 Judgments were entered.  Stipulation ¶ 10.

11.  At all times relevant to this dispute, the real estate owned by the

Debtors (their home) at 1618 Alex Court, Salisbury Township (Allentown Post

Office), PA, 18103,[5] is and has been held by Debtors together as husband and wife

as tenants by the entirety.  Stipulation ¶ 11.

12.  The Mr. Holler $45,000 Guaranty and the Mr. Holler $40,000

Guaranty are together referred to herein as the "Mr. Holler Guaranties."

13.  The Mrs. Holler $45,000 Guaranty and the Mrs. Holler $40,000

---

[5] Although I have slightly revised the language of Paragraph 11 of the Stipulation, Exhibit "D" in the Stipulation as well as Debtors' Schedules filed in this case show that my description of Debtors' address and ownership of their home are correct.

I may take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries and the bankruptcy petition, schedules, and statement of financial affairs filed in this case.  See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); Levine v. Egidi, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. March 8, 1993); In re Paolini, No. 85-00759F, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. Jan. 11, 1991); see generally Nantucket Investors II v. California Federal Bank, (In re Indian Palms Assoc., Ltd.), 61 F.3d 197 (3d Cir. 1995).  Although I may not take judicial notice sua sponte of the facts contained in the debtors' files that are in dispute, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), I may take judicial notice of adjudicative facts "not subject to reasonable dispute . . . [and] so long as it is not unfair to a party to do so and does not undermine the trial court's fact finding authority."  Indian Palms, 61 F.3d at 205 (3d Cir. 1995) (citing Fed. R. Evid. 201(f) advisory committee note (1972 proposed rules).  Nothing in this case leads me to believe that Mrs. Holler's 100% ownership of B&P is in dispute.

6

Guaranty are together referred to herein as the "Mrs. Holler Guaranties."

14.  The Mr. Holler Guaranties and the Mrs. Holler Guaranties are together referred to herein as the "Guaranties."

15.  The Mr. Holler $40,098.44 Judgment and the Mr. Holler $41,076.31 Judgment are together referred to herein as the "Mr. Holler Judgments."

16.  The Mrs. Holler $40,098.44 Judgment and the Mrs. Holler $41,076.31 Judgment are together referred to herein as the "Mrs. Holler Judgments."

17.  The Mr. Holler Judgments and the Mrs. Holler Judgments are together referred to herein as the "Judgments."

18.  Nothing in the Stipulation or anywhere else in the record explains why NOVA utilized two separate guaranty agreements in each B&P loan (one for Mr. Holler and one for Mrs. Holler) rather than one joint guaranty agreement in each B&P loan transaction for both Mr. and Mrs. Holler together.

## B.  PROCEDURAL HISTORY

NOVA entered the Judgments by confession against Debtors on August 3, 2010.  Debtors filed their joint Chapter 7 petition a year later, on August 4, 2011.  On August 9, 2011, Debtors filed two Motions To Avoid Judicial Liens

7

Pursuant to 11 U.S.C §522(f) and N.B.R Rules 4003(d) and 9014, through which

they seek to avoid the liens of the Judgments on their home.  The first Motion To

Avoid was directed specifically at the Mr. Holler Judgments and the second

Motion To Avoid was directed specifically at the Mrs. Holler Judgments.

On August 24, 2011, Debtors timely filed Certifications of No

Response or Objection for both Motions To Avoid and I signed Orders granting

both Motions To Avoid on August 29, 2011.  Between the time that I signed the

Orders granting the Motions and the time they were docketed by the Clerk's

Office, however, NOVA's counsel had entered his appearance and filed late

responses to the Motions.  On September 6, 2011, NOVA filed its Motion for

Reconsideration of Orders Entered August 29, 2011 Granting Debtors' Motions

To Avoid Judicial Liens.  At the September 27, 2011 hearing on NOVA's Motion

for Reconsideration, Debtors' counsel exhibited noteworthy professionalism and

courtesy, and agreed that I should reconsider, on the substantive merits, my

August 29, 2011 Orders granting the Motions To Avoid.  The matter before me at

this time, therefore, is NOVA's request for reconsideration, on the merits, of my

Orders granting the Motions To Avoid.  The parties filed their Stipulation of the

facts on October 6, 2011, and filed their briefs supporting and opposing the

Motions To Avoid on October 21, 2011.

8

On October 19, 2011, NOVA filed its objections to Debtors' claim of

exemptions under Section 522(b)(3)(B) of their home at 1618 Adam Court,

Allentown, PA.  NOVA's opposition to Debtors' exemptions is based upon

NOVA's argument (also at the heart of the within dispute) that the Guaranties

created joint liability of Debtors that therefore constitute a claim against the home

as entireties property.  Debtors filed their reply to NOVA's exemption motion on

November 7, 2011.  Debtors and NOVA have agreed, through stipulations filed on

November 14, 2011, and presented in open Court on November 8, 2011, to

continue the exemption dispute until the Motions To Avoid are resolved because

many of the legal issues in both matters are identical.  Much of the law discussed

and relied upon, and determined in this Memorandum Opinion controls the result

in the objection to exemptions.

The matter of the avoidance of the liens of the Judgments is now ripe

for my determination.  Upon my review of this contested matter, I have determined

the foregoing findings of fact and the following conclusions of law and legal

discussion.  Based on this Memorandum Opinion, I will deny NOVA's motion for

reconsideration and ratify, restate, and re-enter my previous order dated August

29, 2011, granting Debtors' Motions To Avoid.

9

# III.  LEGAL BACKGROUND

## A.  STATUTORY BACKGROUND  –  MOTIONS TO AVOID JUDICIAL LIENS

The two Motions To Avoid are based on Sections 522(b)(3)(B)[6] and

522(f)(1) of the United States Bankruptcy Code.[7]  A judicial lien can be avoided if

it impairs some exemption allowed under the Bankruptcy Code.  As discussed at

more length below, exemption of property held as tenants by the entirety can only

---

[6] This sub-section of Section 522 provides the "state exemptions" for debtors who elect this avenue for exempting assets.

[7]
> (b)(1)  Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
> * * *
> (3) Property listed in this paragraph is –
> * * *
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law; and
> * * *
> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3)[not at issue here], the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is --
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)[not at issue here] . . ..

11 U.S.C. §§ 522(b)(3)(B) and 522(f)(1).

be exercised if the property is exempt from process under applicable non-

bankruptcy (Pennsylvania) law.  A handful of cases have examined

exemption/avoidance in similar matters, but none has addressed the issue of two

identical, separate judgment liens directly.  I analyze the case law and Sections

522(b)(3)(B) and 522(f)(1) below.

# B.  <u>LIENS AGAINST PROPERTY OWNED BY HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY</u>

## 1.  <u>Third Circuit Court – Exemption of Property Owned by Husband and Wife as Tenants by the Entirety</u>

I start my analysis of the unique issue I face[8] with the Third Circuit

Court's decision in <u>Napotnik v. Equibank & Parkvale Savings Association</u>, 679

F.2d 316 (3d Cir. 1982).   <u>Napotnik</u> examined a debtor's attempt to avoid a lien

against property held together with his wife under Pennsylvania law as tenants by

the entirety under Section 522(b)(3)(B).  The Third Circuit found that the new

Bankruptcy Code clearly intended that property of a bankrupt estate held by

---

[8] I note the paucity of Pennsylvania decisions addressing the issue of the effect of two separate judgments against entireties property of a husband and wife.  It is so simple to avoid this problem in both loan transactions and litigation that it should not arise often.  Creditors can simply demand joint guaranties in loan transactions or can sue a couple jointly as husband and wife in general litigation matters if they intend to encumber and collect from entireties property.

11

husband and wife as tenants by the entirety be exempt in bankruptcy to the extent that such property was exempt from process under Pennsylvania law. Id. at 318. The phrase "exempt from process" included more than the specific exemptions allowed to debtors by Pennsylvania law. Id. at 319.  Exempt from process also means immune from process, which allowed debtors to exempt their interest in entireties property that could not be reached by creditors against one or the other spouse. Id.  The court then evaluated what sort of debt could lead to a judgment that would subject entireties property to legal process.

Examining Pennsylvania law, the Napotnik court recognized that a judgment in favor of a creditor against an individual spouse is not an enforceable lien on entireties property, but is merely a presently unenforceable lien on that spouse's expectancy of survivorship.  It constitutes a lien against the property only if and when the other spouse dies. Id.  See also In re Houck, 184 B.R. 21, 23 (Bankr. E.D. Pa. 1995)(until the death of one spouse, entireties property is exempt from process by a creditor of only one spouse, but is not exempt from process by a creditor who is owed a debt by both spouses jointly).  Under The Bankruptcy Act of 1898, title to entireties property passed to the trustee when both husband and wife had been adjudicated bankrupt and their estates were consolidated for administration by a single trustee. Napotnik, 679 F.2d at 320 citing In re Pennell,

12

15 F. Supp. 743 (W.D. Pa. 1935). Under Pennsylvania law, tenants by the entirety

property that was in the hands of a bankruptcy trustee could be subject to

judgment liens if the judgments were joint against the debtor husband and wife.

NOVA's argument therefore is basically that when the first of the

four Judgments (the Mrs. Holler $40,098.44 Judgment) was confessed, Debtors

must have held their breath to see what would happen next. Without a doubt

according to Napotnik, the entry of the Mrs. Holler $40,098.44 Judgment, as a

judgment against only Mrs. Holler, did nothing to lien or encumber their home.

But then, upon the confession of the Mr. Holler $40,098.44 Judgment, a lien on

their home suddenly sprang into existence. This weak legal construct is at the

heart of this dispute.

In In re Carpenter, 5 F. Supp. 101, 101-02 (M.D. Pa. 1933), the court

ruled that property of a husband and wife held as tenants by the entirety was

property of a bankruptcy estate subject to administration. This was so despite their

having filed their bankruptcy petitions individually and severally, rather than

jointly. Two joint judgments by two separate creditors had been entered against

both husband and wife together.[9]  Either of the two judgments could have led to

---

[9] Unlike the Judgments in this case, each of the two judgments considered in Carpenter were
judgments against both husband and wife together and jointly, rather than the four separate, individual,
independent Judgments now before me.

13

execution, levy, and sale of the entireties property under judicial process in

Pennsylvania. The court in Napotnik acknowledged the Carpenter ruling (and

numerous other state and federal decisions) as permitting execution and levy to

enforce a joint debt against entireties property of a husband and wife. Napotnik, at

p. 320. Therefore, property held as tenants by the entirety is not exempt from all

process in Pennsylvania, but only from some. Id.

Not surprisingly, the conclusion in Napotnik was that property held as

tenants by the entirety in the hands of a bankruptcy trustee is not exempt from a

joint judgment on a joint debt. Id. at 321. An individual debtor's interest in real

property owned as tenants by the entirety cannot be exempt from process in

Pennsylvania if he and his wife are joint obligors. He may not, therefore, exempt

his portion of the equity from the effect of a creditor's judicial lien filed against

both debtor and his spouse. Id. at 321-22.

More recently, the Third Circuit Court looked to Napotnik for

guidance when it addressed Pennsylvania law regarding not judgments, but

unsecured claims against a husband and wife in In re O'Lexa, 476 F.3d 177 (3d

Cir. 2007). The court referred to Napotnik for the proposition that spouses in a

joint bankruptcy are not entitled to avoid liens on their entireties property when

liens are against them jointly. Id. at 179. The trustee in O'Lexa argued that an

14

obligation of the wife became an obligation of the husband pursuant to the

Pennsylvania "doctrine of necessaries." The court examined the codification of

the "necessaries" doctrine and found that it did not create a joint obligation, but

provided only individual, several liability. Id. at 179 - 80, citing 23 Pa. C.S.A.

§4102. The court concluded that the statute did not impose joint liability that

would allow a creditor of both spouses to reach entireties property. Id. at 180.

Without joint liability on the "necessaries" claims, the court rejected the trustee's

grounds for attacking the debtor's claim of exemption in entireties property.

The Third Circuit Court decided O'Lexa and a companion case, In re

Brannon and In re Lewis, 476 F.3d 170 (3d Cir. 2007)(consolidated on appeal), on

the same date. In Brannon/Lewis, the court summarized O'Lexa as follows:

> O'Lexa makes clear that the presence of joint liability is
> necessary for a creditor to access property in a bankruptcy estate held
> as tenants by the entireties.

Id. at p. 175. As discussed below, however, something more than liability for the

same debt is needed to allow judgment liens to encumber entireties property.

The Third Circuit Court in O'Lexa also relied on the long-standing

decision in A. Hupfel's Sons v. Getty, 299 F. 939 (3d Cir. 1924). In Hupfel's, the

court faced one judgment that had been entered against the husband and a second,

separate judgment entered against the wife, both arising out of the same

15

underlying business matter.  The husband owed Hupfel's for amounts due (a) for a

lease of certain premises and (b) for the purchase of inventory (beer).  The

husband defaulted in his payments to Hupfel's.  Shortly after the husband's default

in the payment of his debt, his wife became involved in the business and agreed to

assume payment of her husband's debt if Hupfel's loaned her funds for the

purchase of a liquor license for the business.  The default continued and Hupfel's

entered two separate judgments against husband and wife on the same day in the

same business transaction but on two separate obligations  –  the lease and the

guaranty.  Id. at 940 - 41.

        While the judgments against them were liens of record, the husband

and wife sold certain property that they owned as tenants by the entirety to Mrs.

Getty.  Hupfel's proceeded to execute on its judgments against Mrs. Getty's newly

acquired property.  Id. at 939.  The Third Circuit Court expressed doubt that the

common origin of separate debts based on different considerations is the test of a

joint debt that constitutes a lien on entireties property.  To the contrary, the court

decided that the creditor must show some joint act through which the husband and

wife consented to change the attributes of the entireties estate in themselves.

Merely showing the wife's consent to the husband's antecedent transactions was

not enough.  Id. at 941.  The two obligations were entirely separate and were for

16

separate and distinct consideration.  The husband's obligation was original and the

wife's was secondary.  The court concluded:

> If judgment had been recovered on one and not on the other the estate
> by entireties could not, in their lifetime, be reached by execution; and
> similarly, their estate by entireties cannot be reached by execution on
> both judgments unless they arise from their joint act.  The tenants
> were without doubt mutually interested in the transactions which
> resulted in the two judgments.  But mutuality of interest in separate
> transactions out of which had grown separate obligations based upon
> different considerations does not amount to joint action  .  .  ..

Id.

Through Napotnik, O'Lexa, and Hupfel's, the Third Circuit Court

provides the framework to examine the liability of a husband and a wife when

attempting to expose property held as tenants by the entirety to separate judgment

liens against the husband and the wife.

## 2.  Pennsylvania Court − Liens on Property Owned by Husband and Wife as Tenants by the Entireties

In 1992, the Pennsylvania Superior Court noted in its interpretation of

New Jersey law[10] that only one Pennsylvania court had addressed whether separate

judgments against a husband and a wife could constitute a lien against property

they held as tenants by the entirety.  That lone Pennsylvania decision is Blusiewicz

---

[10] The Howard Savings Bank v. Cohen, 414 Pa. Super. 555, 560, 607 A.2d 1077, 1079 (1992).
Although the Howard Savings case results in the same conclusion that I do, it dealt with New Jersey law
and therefore cannot support my decision in this case.

v. Rosenfeld, 33 Pa. D. & C.2d 470 (Mont. Co. Comm. Pleas 1964).[11]    As the only

Pennsylvania decision determining this issue, Blusiewicz carries weight as

representative of Pennsylvania law in the absence of appellate decisions.[12]

Enhancing my regard for Blusiewicz as providing guidance for Pennsylvania law

in this matter is the fact that one member of the three-judge panel of Montgomery

County judges was Judge J. William Ditter, Jr., who presently serves with

distinction on the bench of the United States District Court for the Eastern District

of Pennsylvania.

In Blusiewicz, the court noted that the single judgment obtained in

Illinois and transferred to Pennsylvania was entered against both defendants, not

as husband and wife, but individually.  Id. at 472.   No mention was made in the

Illinois judgment about the defendants being husband and wife; the judgment was

entered against each of them individually; and their liability was not referred to in

any way as joint.  The defendants owned property in Pennsylvania as tenants by

the entirety and plaintiff transferred the judgment and attempted to enforce the lien

---

[11] Neither the parties' research nor my own has led me to any other Pennsylvania state court decision squarely on this issue.  But see the Pennsylvania Bankruptcy Court case, Westmoreland Mall, Inc., v. Bialon (In re Bialon) 67 B.R. 451 (Bankr. W.D. Pa. 1986), discussed at more length below.

[12] If Pennsylvania courts had definitively interpreted the legal issue before me, I would apply that law.  On the other hand (and in this case), state law relating to this matter is sparse at best.  To supplement the lone decision in Blusiewicz, I will therefore look to other, analogous issues in Pennsylvania law to determine how Pennsylvania courts would rule if faced with the same issue.  Kollar v. Miller, 176 F.3d 175, 178 - 79 (3d Cir. 1999).

18

against that property.   The court rejected plaintiff's arguments.  Relying in part on

the Hupfel's decision, the court also referred to North Carolina law as being

instructive.  Noting that North Carolina law was similar to Pennsylvania in

recognizing ownership of property by a husband and wife as tenants by the

entirety, the court cited Southern Distributing Co. v. Carraway, 189 N.C. 420, 127

S.E. 427 (1925). In that case, the North Carolina Supreme Court rejected a levy

against entireties property by a judgment against husband and wife individually.

The Blusiewicz court relied upon and adopted the "syllabus" of the North Carolina

court decision in toto:

> "Where consent judgment was rendered and entered against
> defendants husband and wife, 'individually,' land held by husband
> and wife as tenants by the entirety was not subject to levy under
> execution on such judgment; 'individually' meaning separately and
> personally, as distinguished from jointly or officially, and as opposed
> to collective or associate action or common interest."

Blusiewicz, 33 Pa. D. & C.2d at 473.[13]  The consent judgment in Southern

Distributing was entered against the husband and wife, trading as a business name

and against them "individually."  The North Carolina defendants consented to the

judgment against them individually and separately, not jointly or as a joint

---

[13] The Blusiewicz court refers to this excerpt as the "syllabus" of the Southern Distributing
decision.  My review of the Southern Distributing opinion in both the Southeast Reporter and the North
Carolina Reporter did not reveal a demarcated syllabus or a passage including the language of the
syllabus.  I accept the "quoted" syllabus, however, at the very least, as the Blusiewicz synopsis of the
Southern Distributing decision.

19

obligation.  The North Carolina court found:

> It was no doubt the purpose of the defendants to exclude the
> property, held by them as tenants by the entirety, from execution
> under this judgment, for they consented that same might be entered
> against them individually and not otherwise.

Southern Distributing, 127 S.E. at 428.  The language of the Southern Distributing

case, although not precedential or binding in the matter before me, is instructive as

having also guided the only Pennsylvania court to address the issue now before

me.  I accept the Blusiewicz court's reliance on Southern Distributing and believe

that it is helpful in my analysis.

The Blusiewicz court concluded:

> [T]here cannot be an execution against property held as tenants by the
> entireties unless it is upon a judgment wherein defendants have acted
> jointly as tenants by the entireties and by their action have waived the
> substantive law of tenants by the entireties.

Blusiewicz 33 Pa. D. & C.2d at 473.

## 3.  **Pennsylvania Bankruptcy Court – Liens on Property Owned by Husband and Wife as Tenants by the Entirety**

The United States Bankruptcy Court for the Western District of

Pennsylvania decided a similar dispute about exemption in Westmoreland Mall,

Inc. v. Bialon (In re Bialon), 67 B.R. 451 (Bankr. W.D. Pa. 1986).  The issue, as

formulated by the court, was whether the judgment creditor held a joint claim

against the debtor and her husband, which would subject the entireties property of

debtor and her husband to process under Pennsylvania law.   If the claim was joint,

debtor's entireties property could not be claimed as exempt, pursuant to Section

522(b)(2)(B).  Id. at 452.  Debtor owed money pursuant to a lease for her retail

sales space in a mall.  Her husband entered into an "Individual Guaranty"

document, agreeing to be liable for her debt if she defaulted.  Id. at 452 - 53.  If the

debt created by the lease (wife's obligation) and the guaranty (husband's

obligation) were joint debt, the entireties property could not be exempted and

relief from the stay would be granted to permit the judgment creditor to foreclose

on the entireties property pursuant to its judgment.  Id. at 453.  But if the lease and

guaranty obligations were separate and distinct, arising as they did from entirely

separate and distinct documents, no joint debt could be found and the exemption

would be upheld.  Id.

The court reviewed Pennsylvania law as it pertained to guaranties and

sureties and determined that the guaranty in question, although titled Individual

Guaranty, was actually a suretyship agreement under Pennsylvania law.  Id.

Generally under common law, a guaranty is a collateral and independent

obligation that creates only secondary liability; a suretyship agreement, on the

other hand creates primary liability on both its obligor and the principal.  Id.

21

After its analysis of the common-law distinctions between guaranties

and sureties, the Bialon court turned to Pennsylvania's codification of the

difference through Public Law 971, 8 P.S. §1, which resolves the issue as follows:

### §1.  What constitutes contract of suretyship

Every written agreement hereafter made by one person to
answer for the default of another shall subject such person to the
liabilities of suretyship, and shall confer upon him the rights incident
thereto, unless such agreement shall contain in substance the words:
"This is not intended to be a contract of suretyship," or unless each
portion of such agreement intended to modify the rights and liabilities
of suretyship shall contain in substance the words: "This portion of
the agreement is not intended to impose the liability of suretyship."

1913, July 24, P.L. 971, 8 P.S. §1.  Bialon, 67 B.R. at 454.  Under Pennsylvania

law, therefore, debtor's husband was primarily liable with debtor, as a surety, for

the lease obligation.  Id.  See also Leedom v Spano, 436 Pa. Super. 18, 28, 647

A.2d 221, 226 (1994)("It is a fundamental principle of surety law that upon default

by the principal, both principal and surety thereupon become liable on the original

undertaking.").  Accord In re F.B.F. Industries, Inc., 165 B.R. 544, 548 (Bankr.

E.D. Pa. 1994).  Since the passage of Public Law 971, the liability of one person to

answer for the default of another is that of suretyship unless their agreement

expressly indicates a contrary intent.  First Nat. Bank of Leesport v. Houck, 18

Berks 174, 176 (Pa. Ct. Comm. Pl. 1926).

By virtue of both the lease and the guaranty, the court declared

22

without referring to Pennsylvania law,[14] that debtor and her husband were jointly

liable for the debt upon debtor's default under the lease. Bialon, 67 B.R. at 454.

The court also found that the lease and guaranty created identical obligations

relating to duration, contingencies, and amount owed, thereby producing a single

debt owed for the lease payment. Id.

The Bialon judge distinguished Hupfel's from applying to his case:

Although Hupfel's involved a husband and wife, with one spouse's agreement to

guaranty the indebtedness of the other, the Third Circuit Court had found no joint

act because they were separate transactions with separate consideration for each

obligation. Id. In Bialon, the court found that the consideration that the debtor

and her husband gave and received was identical. Each spouse agreed to pay

rental fees, debtor/wife as principal and husband as guarantor, so debtor/wife

could operate her retail store business from the leased premises. Id. The loan

documents before the court in Bialon, although physically separate, created a joint

obligation, making debtor and her husband jointly and severally liable to the

judgment creditor.[15] The entireties property of debtor and her husband was

---

[14] The court in Bialon needed no reference to support this ruling because the nature of the
liability of a principal and its surety has long been regarded as joint. See Haddens v. Chambers, 2 U.S.
(Dall.) 236, 1 Yeates 529 (1795). See also, 48-50 Enterprises, Ltd., v. Rimmeir, (In re Bradstreet), Nos.
01-18357, 01-30953, and 01-0775, 2002 WL 31987287 at p. *8 (Bankr. E.D. Pa. Dec. 31, 2002).

[15] The Bialon court ignored the effect that Public Law 971, discussed above, should have had in
Hupfel's. Under Public Law 971, 8 P.S. §1, at least the guaranty portion of the wife's obligations to

therefore not exempt from process by the couple's creditors under Pennsylvania

law and therefore could not be exempted under Section 522(b)(2)(B).  The

couple's property was available for the judgment creditor's efforts to satisfy the

joint debt and the Bankruptcy Court granted relief from the stay to allow the

creditor to enforce its judgment.

---

Hupfel's constituted a suretyship, thereby imposing the same joint liability on the couple in Hupfel's as
was found in Bialon.

24

# IV.  DISCUSSION

# A.  APPLICATION OF THE CASE LAW

## 1.  Avoiding the Issue by Drafting the Guaranties Differently

NOVA could have had Debtors execute a single guaranty together as husband and wife.[16]  NOVA could have had each Debtor agree, in separate guaranties, that his/her liability was joint with his/her spouse, who had executed an identical but separate guaranty.  NOVA could have had Debtors sign a document in addition to the Guaranties, which document would constitute Debtors' knowing waiver of the attributes and protection of their owning their home as tenants by the entirety, thereby expressly authorizing NOVA to execute, levy, and sell their home upon a default.  NOVA could have had Debtors execute a mortgage to secure their  Guaranties.  NOVA did none of these simple changes to the loan documents, any one of which would have made quite clear that Debtors intended their liability to be joint, not separate and individual, and as husband and wife.  To the contrary, the Guaranties are unquestionably individual and separate in nature and substance.

---

[16] Numerous references, definitions, and interpretative sections of the Guaranties make it clear that the form for the document used by NOVA may be signed by multiple parties together:  See Guaranties, Exhs. "B," "C," "D," & "F," at p. 3.

NOVA could have required Debtors to memorialize their joint

liability, easily and expressly, thereby subjecting their entireties property to

execution, levy, and sale. None of the language in the Guaranties (or in any of the

other loan documents) shows any intention of NOVA or Debtors that Debtors'

obligations to NOVA were joint and subject to collection against their entireties

property. Based upon the actual language of the Guaranties, I will analyze the

facts in this dispute pursuant to the cases that establish how Debtors' property is or

is not subject to the liens of the Judgments.

## 2. __Joint Liability Under Hupfel's__

In <u>Hupfel's</u>, the Third Circuit identified four elements to determine

joint liability between a husband and wife. First, joint liability is unlikely if the

couple did not evidence a joint act consenting to change the attributes of the

tenants by the entireties ownership. Nothing in the Guaranties suggests anything

about Debtors' consent to change the protective attributes of owning their home as

tenants by the entirety. Second, joint liability is unlikely if both husband and wife

are not subject to primary liability. Upon the event of default of the loans in this

case, Mr. Holler became primarily liable with B&P through the Mr. Holler

Guaranties for the amounts set forth in the Mr. Holler Judgments. Upon the event

of default, Mrs. Holler became primarily liable with B&P through the Mrs. Holler

Guaranties for the amounts set forth in the Mrs. Holler Judgments. But Mr. Holler signed nothing making him directly, primarily, or jointly liable for the Mrs. Holler Guaranties and Mrs. Holler signed nothing making her directly, primarily, or jointly liable for the Mr. Holler Guaranties.[17]

Third, joint liability is likely if the mutual interest displayed by the couple in the res of the loan and liability for it is without doubt. Nothing in the Guaranties or in any other loan documents reflects any <u>mutual</u> interest of Debtors in any of the loans that constitute the res in this case. Mrs. Holler was president of B&P and Mr. Holler was vice president and secretary of B&P when they signed the Guaranties. Stipulation, Exh. "A," at p. 3. But Mrs. Holler owns 100% of the stock in B&P and Mr. Holler owns none.[18] Their ownership interests in B&P are entirely disparate and therefore cannot serve as a mutual interest. Furthermore, nothing in the Stipulation (nor anywhere else in the record) provides facts that describe their compensation (if any) from B&P[19] or the benefits to them (if any)

_____

[17] At page 32, fn. 22 below, I question whether something similar to transitive liability between co-sureties exists, such as the following:
> A is a surety for and jointly liable with B.
> C is a surety for and jointly liable with B.
> Is A therefore jointly liable with C? As the discussion shows, the answer is No.

[18] This is not a stipulated fact, but is contained in ¶13 of Debtors' Schedule B filed in this case. It is the only evidence of ownership of B&P that exists.

[19] Debtors' Schedule I filed in this case describes Mr. Holler's employment as a driver for Eastern Warehouse Distributors and Mrs. Holler's employment as a cashier at Wal-Mart.

for serving as its officers.

Fourth, joint liability is unlikely if the husband and wife receive separate consideration for their obligations. I have no idea of the consideration Mr. Holler received or enjoyed for executing the Mr. Holler Guaranties; I have no idea of the consideration Mrs. Holler received or enjoyed for executing the Mrs. Holler Guaranties. Consideration for Debtors might have been identical, but has not been shown to me in any way. The only reference to any consideration received by Debtors is the bald, ubiquitous phrase: "For good and valuable consideration . . ." Guaranties, Exhs. "B," "C," "D," & "F," at p. 1. This statement, although providing the legal basis for binding Debtors to their Guaranties, does not elucidate the nature or amount of any consideration whatsoever.[20]   NOVA does not comment anywhere on the issue of consideration. NOVA might have, on the face of the Guaranties, claimed or shown that the consideration for each of the Debtors is identical. Not so. The consideration for Mr. Holler and Mrs. Holler is unknown. No one can tell from the record therefore that the consideration for each of the Guaranties was in any way identical.

Furthermore, both Guaranties expressly note that NOVA did not ask

---

[20] In two separate miscellaneous or definition sections of the Guaranties, the nature and meaning of Debtors' "consideration" is not defined, explained, described, or enhanced. Guaranties, Exhs. "B," "C," "D," & "F," at pp. 2 & 3.

28

for or require the Guaranties from Debtors:

> GUARANTOR'S REPRESENTATIONS AND WARRANTIES:
> Guarantor represents and warrants to Lender that:
> \* \* \*
> (B) this Guaranty is executed at Borrower's request and not at the
> request of Lender . . ..

Guaranties, Exhs. "B," "C," "D," & "F," at p. 2.

Under the four tests established by the Third Circuit Court in

Hupfel's, I conclude that the Judgments of Debtors are clearly not joint obligations

through which Debtors consented to surrender the protections of their ownership

of their home as tenants by the entirety.  Under each of the Hupfel's four tests,

Debtors' entireties property would not be subject to execution, lien, and sale by

NOVA.  Debtors' exemptions would be valid, permitting the avoidance of the

Judgments.

## 3. <u>Joint Liability Under Blusiewicz and Southern Distributing</u>

Blusiewicz and Southern Distributing, the North Carolina decision on

which it relies for guidance, provide more recent guidance than Hupfel's to

determine if separate actions of a husband and wife expose their entireties property

to their creditors.  The elements of such exposure follow.  First, joint liability is

unlikely if judgment is expressly entered against a husband and wife separately,

personally, or individually by consent.  Alternatively and second, joint liability is

likely if judgment is expressly entered jointly, formally against them together as

husband and wife, or collectively.   Third, but similarly, joint liability is unlikely

upon the exclusion of language suggesting joint liability or liability as husband

and wife.   Fourth, joint liability is likely if a judgment was entered in which

defendants acted or were described jointly as tenants by the entirety who waive the

protection of holding property by the entireties.

   I quoted <u>Blusiewicz</u> previously, but its conclusion is directly on point

in this case and bears repeating:

> [T]here cannot be an execution against property held as tenants by the
> entireties unless it is upon a judgment wherein defendants have acted
> jointly as tenants by the entireties and by their action have waived the
> substantive law of tenants by the entireties.

<u>Blusiewicz</u> 33 Pa. D. & C.2d at p. 473 (emphasis added).

   The language of the Guaranties and the Judgments is irrevocably

individual in nature.   Nothing in the Mr. Holler Guaranties or the Mr. Holler

Judgments refers in any way to Mrs. Holler, their marital relationship, or

ownership of their home as tenants by the entirety.   Nothing in the Mrs. Holler

Guaranties or the Mrs. Holler Judgments refers in any way to Mr. Holler, their

marital relationship, or ownership of their home as tenants by the entirety.   I adopt

the tests established by <u>Blusiewicz,</u> as the only Pennsylvania court to address this

issue head on, and <u>Southern Distributing</u>, the North Carolina Supreme Court

30

decision relied upon in <u>Blusiewicz</u>.[21]  Both <u>Blusiewicz</u> and <u>Southern Distributing</u>

are consistent with the Third Circuit Court in <u>Hupfel's</u>.

 I conclude therefore, based upon <u>Blusiewicz</u> and <u>Southern</u>

<u>Distributing</u> (and <u>Hupfel's</u>) that the liens on the Judgment against Debtors, which

arose from the Guaranties, did not subject Debtors' entireties property to

execution, levy, and sale by NOVA.   Debtors' exemptions are therefore valid and

support avoidance of the Judgments.

## 4. <u>Joint Liability Under Bialon</u>

 Neither the Guaranties as a whole nor any separate provision in them

includes a statement that the Guaranties are not suretyship agreements as required

by Public Law 971 to prevent the Guaranties from being deemed to be suretyship

agreements.   Guaranties, Exhs. "B," "C," "D," & "F."   Statutorily, therefore, the

Guaranties are suretyship agreements.  Public Law 971, 8 P.S. §1.  The issue

before the <u>Bialon</u> court differed substantially from that presently before me.  In

<u>Bialon</u>, the sole issue was whether the spouse/guarantor/surety was jointly liable

with the spouse/principal obligor.  In the case before me, on the other hand: (a)

---

[21] Section 522(b)(3)(B) differentiates between jointly held property and property owned as
tenants by the entirety when it provides the exemptions for property held either way.  Congress must
have intended that the two means of ownership differ or it would not have included both.  Some joint act,
something more than mere liability for the same debt therefore, is necessary to constitute a lien on
entireties property.

Mr. Holler is surety for and jointly liable with B&P and (b) Mrs. Holler is surety

for and jointly liable with B&P.

I conclude from Bialon (perhaps redundantly with other decisions

discussed herein), that each Debtor individually is jointly liable with Debtors'

company, B&P. Two important issues, however, were not addressed in Bialon.

First, is one surety of a principal's indebtedness jointly liable with a co-surety of

the same indebtedness? Mr. Holler is surety for and jointly liable with B&P. Mrs.

Holler is surety for and jointly liable with B&P. Does that mean that Mr. Holler is

jointly liable with Mrs. Holler?[22]

The second unaddressed question is more significant. In Bialon, the

court distinguished Hupfel's and ignored Blusiewicz (in which the courts found no

joint liability). In both cases, the courts required more than simple liability for the

same debt. Hupfel's also required a "joint act consenting to a change in the

attributes of the estate in themselves and not their consent to antecedent

transactions." 299 F. at 941. In examining the facts to find such a "joint act"

when the creditor had entered two separate judgments against the married couple,

---

[22] For want of a more appropriate label, I refer to this question as whether some transitive principle applies to co-sureties' obligations. Arithmetically: If A = C and if B = C, then A = C. I do not believe that this principle applies to sureties. That is, merely because A is surety and jointly liable for C's debt and B is surety and jointly liable for C's debt, does not mean that A is jointly liable for B's debt.

Although in a different context, the nature of co-sureties' liability with each other has long been addressed under Pennsylvania law and is discussed below, in the context of NOVA's first alternative argument in opposition to the Motions To Avoid.

the Third Circuit found that both the husband and wife had a mutual interest in

seeing their enterprise succeed.  But the court went on to recognize that their

mutual interest was insufficient, in and of itself, to conclude that the two separate

judgments, taken together, constituted a lien against entireties property.  Id.

Hupfel's also rejected the creditor's argument that mutual action supported

collection of the judgments against entireties property.  To the contrary, the couple

had entered into two separate transactions out of which had grown separate

obligations.[23]  Id.  The court in Bialon distinguished Hupfel's because of the

separate transactions and different consideration.  The instruments in Bialon,

although physically separate, created a joint obligation.  Upon its determination

that the obligation was joint, the court found that the entireties property was

subject to execution, levy, and sale under Pennsylvania law.  Bialon, 67 B.R. at

454.  The court did not consider Bluziewicz and ignored the other aspects of the

liability of the couple, as considered in Hupfel's.  For these reasons, I do not rely

on Bialon as providing guidance about Pennsylvania law in this dispute.

# B.  NOVA'S ALTERNATIVE ARGUMENTS

## 1.  Even If No Judgments Had Been Entered, Debtors' Joint Debt

---

[23] The court in Hupfel's also regarded the separate and independent consideration of the two
obligations as a factor in its decision.

## Precludes Them from Exempting Their Entireties Property

NOVA presents two arguments as alternatives to its basic defense that the four Judgments themselves permit execution, levy, and sale of Debtors' entireties property. First, NOVA claims that Debtors' joint liability for the B&P debt exists without regard to whether the Judgments were entered against them. NOVA argues that, even if it had not confessed the Judgments, the nature of Debtors' liability to NOVA under the separate Guaranties is joint, thereby preventing Debtors from exempting their entireties property from disposition by the Chapter 7 Trustee.[24]   The cases on this issue arise from widely disparate factual and legal circumstances and reflect very different approaches to the joint liability.  A first pair of decisions (discussed below) finds no joint debt, whereas another pair of decisions (also discussed below) finds joint indebtedness.   My analysis of Pennsylvania law in this bankruptcy context leads me to (a) follow the first pair of decisions, reject joint debt, and uphold debtors' exemptions under circumstances not precisely before me and (b) distinguish the second pair of decisions (neither of which was cited or briefed by the parties before me), which

---

[24] Memorandum of Law Filed on Behalf of NOVA Bank in Opposition to the Motions of Debtors, etc., at p. 8.

NOVA's alternative argument is far from theoretical or hypothetical.  NOVA has filed its opposition to Debtors' declaration of Pennsylvania exemptions and this Memorandum Opinion will necessarily apply to that pending motion.

34

describe co-sureties' co-liability also under circumstances not before me. Based upon the first pair of decisions (coupled with Hupfel's and Blusiewicz), I predict that Pennsylvania courts would find no joint debt frustrating the exemption of Debtors' home as entireties property in this case.

### a. **Joint liability under the Brannon/Lewis and O'Lexa cases**

As I discussed briefly above, the Third Circuit Court decided three cases together on the same day in 2007. The first decision was in two consolidated cases, In re Brannon and In re Lewis, supra, 476 F.3d 170 (3d Cir. 2007), and the second decision was in the third case, In re O'Lexa, supra, 476 F.3d 177 (3d Cir. 2007). The debtor in O'Lexa had substantial credit card debt in her name alone. She owned her home with her husband as tenants by the entirety, so she elected the state exemptions  The Chapter 7 Trustee challenged debtor's claim of exemption of her home as entireties property. The court reiterated the longstanding rule that when one spouse files bankruptcy, individual claims against that debtor do not vitiate the immunity of entireties property. O'Lexa, 476 F.3d at 179.[25]

The Trustee used a novel approach in his objection to Debtors' claim

---

[25] As noted above, the court in Brannon/Lewis succinctly summarized its companion decision as follows: "O'Lexa makes clear that the presence of joint liability is necessary for a creditor to access property in a bankruptcy estate held as tenants by the entireties."  476 F.3d at 175.

of exemption — he argued that the debtor's credit card purchases for household

goods and bills constituted legal "necessaries" for her and her husband.   Under

Pennsylvania law, when debts are contracted by one spouse for "necessaries" for

the support and maintenance of the family, the creditor may proceed against both

spouses directly for the debt. 23 Pa. C.S. §4102.  The claim against the non-

purchasing spouse, however, may be satisfied solely out of that spouse's separate

property. Id.  Because Section 4102 establishes that indebtedness for

"necessaries" constitutes a "separate claim" against the non-purchasing spouse, the

liability is not joint and cannot reach the entireties property.  As the court

summarized O'Lexa in the Brannon/Lewis decision, the statute did not create joint

liability, but rather made the spouse who bought the "necessaries" primarily liable

and the other spouse only secondarily liable. Brannon/Lewis, 476 F.3d at 175.

         The Third Circuit Court's reference to the non-purchasing spouse as

being "secondarily liable" is instructive. The "necessaries" statute does not refer

to the debt owed by the non-purchasing spouse as anything other than direct and

immediate. 23 Pa. C.S. §4102. The statutory limitation is only that collection of

the "necessaries" obligation from the non-purchasing spouse may come solely

from that spouse's separate property. Id. Yet the court considered that limitation

as creating secondary liability. This analysis of secondary liability can extend to

36

the liability of a husband and a wife who sign separate written instruments making

them liable for the same debt, which is the case before me.

The court in both O'Lexa and Brannon/Lewis reviewed allegedly

joint claims, none of which were the subject of judgments. The court determined

the exemption of entireties property based upon claims that were general

unsecured claims — not judgments. Judgments are not necessary for a creditor, a

trustee, or any other party in interest to contest the exemption of entireties property

in the face of obligations for which both spouses are liable. Accord, Houck, supra,

184 B.R. at 24. Thus, NOVA correctly claims that Debtors' obligations under the

Guaranties, even if the debt had not been reduced to the Judgments, could have

been considered. This argument, although unassailable, fails to add substance

supporting NOVA's position. The same analysis of the nature of the obligations,

whether secured by judgments or as unsecured claims, must be undertaken.

Although not discussed in O'Lexa, the provider of the "necessaries"

could have sued and obtained a single judgment against both the purchasing

spouse and the non-purchasing spouse. One judgment would exist: The claims

against both parties would be identical in underlying transaction, amount, origin,

and, in particular, consideration — but, by statute, the non-purchasing spouse

would be only secondarily liable.  Or the creditor could obtain two separate

37

judgments against the spouses.  Two judgments would exist:  Identical in

underlying transaction, amount, origin, and, once again in particular,

consideration.  As stated in O'Lexa, whether holding a single judgment against

both husband and wife individually or two separate judgments against them, the

creditor could not assert joint liability that would allow it to reach entireties

property and therefore no joint claim existed in opposition to the debtors' claim of

exemption.  O'Lexa, supra, 476 F.3d at p. 180 (citing the Hupfel's decision).

### b.  Joint liability under the Bahara/Brizer & Keystone Bank cases

In the consolidated cases of  In re Bahara and In re Brizer, 219 B.R.

77, 80 (M.D. Pa. 1998)(consolidated on appeal), District Court Judge Thomas I.

Vanaskie (now Third Circuit Court Judge) stated that the issue before him was the

determination of the relationship between co-sureties of a principal obligor's debt.

Enunciation of this issue appears to address head-on the relationship between the

Debtors as co-sureties in the dispute before me.  But the circumstances that Judge

Vanaskie faced differ substantially from those before me.

In Bahara/Brizer, numerous members of three families guaranteed the

debt owed to the creditor by the principal borrower, a family-owned brewery.

Sharply differing from the matter at hand, the guarantors had all signed a single

guaranty agreement and were expressly jointly and severally liable for the

38

principal's obligation. Id. at 80.  The creditor reached an agreement with one of

the guarantying families for payment of an amount less than its proportional share

of the total indebtedness and released those family members of further obligations

to the creditor.  Id. at 78 - 79.  Judge Vanaskie relied heavily on the Pennsylvania

Supreme Court decision in Keystone Bank v. Flooring Specialists, Inc., 513 Pa.

103, 518 A.2d 1179 (1986), to determine if the liability of the non-released

sureties had been reduced or otherwise affected by the release of the other sureties.

The issue he addressed, therefore, differed substantially from the matter now

before me and his analysis of the law of co-sureties does not apply to this case.

> Judge Vanaskie referred to and quoted Keystone Bank:
>
> "Where . . . there are several sureties for the principal's unpaid debt,
> each surety owes to his co-sureties a duty to pay his proportional
> share of their common debt." Id. at 115, 518 A.2d 1179.  Upon
> default by the principal in a suretyship, each surety becomes a
> principal for his or her pro rata share and remains a surety for the
> balance of the debt.  Id. at 116, 518 A.2d 1179 ("[W]here there are
> several co-sureties each of them is in legal effect, as against the
> others, a principal for his proportion of the debt and a surety for the
> rest of it.")  Accordingly, in this case, the [sureties] were each liable
> as principals to pay their proportionate share of the indebtedness to
> the Bank . . ., and each remained liable as sureties for their co-
> guarantors' proportionate shares.

219 B.R. at 80 - 81.  Again, I observe that this explanation of the interplay and

liability between these co-sureties is based on a single guaranty agreement in

which all of the guarantors/sureties expressly agreed to joint and several liability

with their fellow sureties.

In Bahara/Brizer and Keystone Bank, the courts considered the

"debts" owed between and among the principal and all sureties when the creditor

released one of the obligors (whether the principal obligor or a guarantor).  The

courts' analysis was built upon a significant fact and a significant "what if."  Their

determinations were based on (1) the sureties' express agreement to be jointly

liable and (2) "what if" the loan and surety documents do not provide an

explanation of how, when, what, and who could be released by the creditor

without reducing or discharging the liability of the remaining co-obligors and co-

sureties.  That is, some of the legal analysis would not pertain if the loan and

surety documents spelled out what would happen if the creditor released one or

more obligors, one or more sureties, or some collateral.  219 B.R. at 81; 513 Pa. at

115 - 16, 518 A.2d at 1185 - 86.

The Bahara/Brizer and Keystone Bank courts reviewed the legal

construct of co-sureties' expressly joint obligations with one another to address

the common-law problem that arises upon the release of other obligors/sureties.  In

Bahara/Brizer, Judge Vanaskie reviewed Title 13 Pa. C.S.A. §3606, which

provides that, without an express reservation of rights, a creditor who releases a

party to a loan or collateral securing the loan discharges at least some of the

40

obligations of other parties to the instrument. And, on the other hand, Section

3606 provides that a party who expressly reserves the right to release co-obligors

may release an obligor, a surety, or collateral without affecting the liability of

another co-surety. 219 B.R. at 82 and n. 10. As I will detail below, the terms of

the Guaranties expressly reserve NOVA's right to release co-obligors and sureties

without affecting the liability of any other obligor or surety.

The importance of these distinctions is manifest in the differing

nature of the liability between and among the principal and the sureties. The

above quote from <u>Keystone Bank</u> in Judge Vanaskie's opinion makes clear that

the sureties are liable as principals with the primary obligor and must pay their

proportionate share of the primary obligor's debt. <u>Id.</u> at p. 81. This basic legal

conclusion reflects literally centuries of jurisprudence.[26] But Judge Vanaskie goes

on to describe the further legal obligation of co-sureties to the primary obligor

according to <u>Keystone Bank</u>. <u>Id.</u> Sureties owe their proportionate share of the

principal's debt as principals themselves. <u>Id.</u>[27] But their responsibilities to their

---

[26] <u>See</u> note 14, above.

[27] Again, Judge Vanaskie analyzed the obligations to each other of co-sureties who were
expressly jointly liable with each other, by quoting from <u>Keystone Bank</u>:

> [I]n the case of co-sureties, the equitable principles of suretyship are observed, and
> accordingly, each must be treated as between himself and his co-sureties as a principal
> for the fraction of the debt which he ought to pay, and as a surety for the remainder. <u>If
> the creditor by any dealings with one co-surety impairs the suretyship rights of other co-
> sureties, they will be discharged from such a proportion of the debt as they would</u>

co-sureties for the debt beyond their proportionate share is secondary liability, due

to the creditor only upon a default of a co-surety in paying its proportionate share.

Debtors individually, of course, are primarily liable to NOVA with

B&P pursuant to the Guaranties.  But as between themselves, Debtors did not

expressly agree to joint liability.  Bahara/Brizer and Keystone Bank do not say that

all sureties of a principal obligor are jointly liable.[28]  The sureties in those cases

were jointly liable because they had expressly agreed to be.  Sureties are not

primarily or jointly indebted to each other absent something manifesting that

liability.  Debtors' debt to NOVA is not joint.  Debtors' obligations are similar to

the secondary liability recognized by the Third Circuit Court in both Hupfel's and

O'Lexa in the context of the debts they faced.

As I note in detail below, the terms of the Guaranties are replete with

language expressly reserving NOVA's right to release any obligor, any guarantor,

or any collateral without reducing or discharging the liability of any other

guarantor.  Judge Vanaskie remanded the cases of Brannon/Lewis to the

_____

> equitably have been entitled, on payment of it, to throw upon the co-surety with whom
> the inequitable dealings have been had.

219 B.R. at 81 - 82 (quoting 513 Pa. at 116, 518 A.2d at 1186) (quoting 10 S. Williston, A Treatise on
the Law of Contracts §1263, at 840 (3d ed. 1967))(emphasis in Bahara/Brizer).

[28] The holdings of Bahara/Brizer and Keystone Bank do not apply to the case now before me.  I
include them in my analysis of the meager case law, however, because the language of each (if the
background facts are not inspected) appears to declare that co-sureties of an obligation are jointly liable.
Upon consideration of the facts before the courts, no such holding exists.

Bankruptcy Court to review, inter alia, the loan documents to determine if any

such reservation of rights existed.  Id. at 83.  The terms of the Guaranties are

therefore helpful to determine if this case is similar to and controlled by the

Brannon/Lewis and Keystone Bank decisions.

### c.  Terms of Guaranties – Release, settlement, discharge of co-sureties

The issue faced by the courts in Bahara/Brizer and Keystone Bank is

not the issue in this case.  Judge Vanaskie and the Pennsylvania Supreme Court

determined the liability of jointly liable sureties when the lender reached a

settlement with one of their number whom they then released.  This issue is not

before me because (1) Debtors' Guaranties do not expressly make their obligations

joint liabilities and (2) the language in the Guaranties expressly reserves NOVA's

power to settle with and release either B&P or one of the sureties without

releasing or discharging the other surety.  The following excerpts from the

Guaranties show the express reservation by NOVA of its rights to release a party

or collateral without reducing the liability of the signatories to the Guaranties in

any way:

> This is a guaranty of payment and performance and not of collection,
> so Lender can enforce this Guaranty against Guarantor even when
> Lender has not exhausted Lender's remedies against anyone else
> obligated to pay the Indebtedness or against any collateral securing
> the Indebtedness, this Guaranty or any other guaranty of the
> Indebtedness. * * * Under this Guaranty. Guarantor's liability is

43

unlimited and Guarantor's obligations are continuing.

Guaranties, Exhs. "B," "C," "D," & "F," p. 1, Section titled: "Continuing

Guarantee of Payment and Performance."

> [Lender has the right:]  . . .  (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any times or in any manner Lender may choose . . ..

Guaranties, Exhs. "B," "C," "D," & "F," p. 1, Section titled: "Guarantor's

Authorization to Lender."[29]

> Guarantor waives any right to require Lender:  . . .  (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor . . ..

Guaranties, Exhs. "B," "C," "D," & "F," p. 2, Section titled: "Guarantor's

Waivers I."

> Guarantor also waives any and all rights or defenses based on suretyship . . . including, but not limited to, any rights or defenses arising by reason of . . . (C) any disability or other defenses of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever . . ..

Guaranties, Exhs. "B," "C," "D," & "F," p. 2, Section titled: "Guarantor's

Waivers II."

> Under these provisions of the Guaranties, NOVA would suffer no

---

[29] The guaranty at issue in <u>Bahara/Brizer</u> had no such right of release.  219 B.R. at 83.

44

diminution of its ability to collect the full amount of its debt from either Debtor

even if NOVA released the other Debtor or B&P completely. The two significant

underlying predicates on which the Bahara/Brizer and Keystone Bank decisions

were based are missing. Despite these changed circumstances, the analysis of

these two cases supports finding that Debtors are not jointly liable to NOVA under

the Guaranties or Judgments.

I have reviewed and I accept the guidance of O'Lexa, Hupfel's, and

Blusiewicz, describing what is needed to find joint liability, and Bahara/Brizer and

Keystone Bank, relating to co-sureties' liability for debt. I believe that the

Pennsylvania Supreme Court, faced with a similar situation, would recognize that

its Keystone Bank decision addresses only the issue of releases of co-sureties who

have expressly agreed that they are jointly liable with each other. Keystone Bank

does not apply to NOVA's attack on the attribute of Debtors' property held as

tenants by the entirety. The separate, independent Judgments, based on the

separate, stand-alone written Guaranties make no mention of joint liability or of

destroying the attribute of tenancy by the entirety. Keystone Bank (and therefore

Bahara/Brizer) refers to the primary, joint liability of co-sureties with the principal

compared to the possibly secondary liability of co-sureties. I predict that

Pennsylvania courts would reject the notion that separate, independent judgments

45

entered individually against a husband and wife would encumber their property

held as tenants by the entirety.

The obligations created by certain suretyship agreements are and may

be construed to be joint obligations of a married couple in certain situations. But

not all obligations incurred by a husband and wife at or near the same time

constitute joint obligations that void the protection against individual judgment

creditors afforded by holding property as tenants by the entirety. Expressly

supporting this analysis are the decisions in O'Lexa, Blusiewicz, and Southern

Distributing.   Those decisions required some overt action that showed the parties'

surrender of the attributes of their holding property as tenants by the entirety.  No

such overt action exists here.  The nature of the obligations under the Guaranties,

even if the Judgments had not been confessed, does not destroy Debtors'

exemption of their entireties property under Section 522(b)(3)(B) of the

Bankruptcy Code.  I reject NOVA's first alternative argument, largely because the

obligations owed to NOVA under the Guaranties simply do not constitute joint

claims whether unsecured or secured through the liens of the Judgments.

## 2. NOVA Is Obliged To File Separate Actions Against Debtors To Be Able To Enforce Its Judgments

NOVA's second alternative argument bears only limited

46

consideration. NOVA explains that it cannot enforce the Judgments under

Pennsylvania law without initiating additional, independent actions against

Debtors to execute and levy on the liens of the Judgments. NOVA points out that

each of the Guaranties provides for this. Doing little more than what is required

under Pennsylvania law, the Guaranties provide the following notice after the

warrants of attorney that authorized the entry of the Judgments by confession:

> The lien arising from any judgment confessed or entered pursuant to
> the foregoing authority shall not extend to any of Guarantor's
> residential real property as that term is defined in the Pennsylvania
> Act of January 30, 1974 (Pa. Laws 13, No. 6), referred to as the Loan
> Interest and Protection Law, as amended, and the holder of any
> judgment confessed or entered pursuant to the forgoing [sic] authority
> shall not, in enforcement of any such judgment, execute, levy or
> otherwise proceed against any such residential real property;
> provided, however, that the lien of such judgment shall extend to such
> residential real property and that the holder thereof shall be permitted
> to execute, levy or proceed against such residential real property from
> and after the entry of a judgment as contemplated by Section 407 of
> such Loan Interest and Protection Law and Rules 2981 and 2986 of
> the Pennsylvania Rules of Civil Procedure, or successor or similar
> statutes and rules.

Guaranties, Exhs. "B," "C," "D," & "F," at p. 4, Section: "Confession of

Judgment."

Pursuant to Rules 2981 - 2986 of the Pennsylvania Rules of Civil

Procedure, a creditor may enforce the lien of judgment obtained by confessing

judgment against residential real estate by filing a complaint to confirm the

confessed judgment to the judgment in a later action.  Pa. R. Civ. Proc., Rules

2981 - 2986.  Specifically, Rule 2986(a) provides:

> (a) Judgment shall be entered in the action [to conform the judgment] for the amount, if any, due the plaintiff from the defendant or the amount, if any, due the defendant from the plaintiff.  That judgment shall merge with the confessed judgment.  The court shall enter an appropriate order conforming the confessed judgment to the judgment in the action.

Pa. R. Civ. Proc., Rule 2986(a).  Only after a conforming judgment is entered can

a creditor execute and levy against residential property.

In its action to conform the judgment, NOVA would be obliged to

plead and prove that the separate, independent Judgments should be conformed by

the new action under Rule 2986.  Furthermore, NOVA would be obliged to argue

that the independent, individual Guaranties and Judgments should be bound

together and deemed to be joint obligations under Pennsylvania law to permit it to

proceed against Debtors' home, their entireties property.  Through its pleadings

and during the hearing on that matter, Debtors could and would oppose NOVA

with the same arguments raised herein.  I predicted above that Pennsylvania's

courts would decline to hold that the Judgments are presently enforceable liens

against Debtors' home.   I believe, for the same reasons, that the action to conform

judgments would fail and NOVA would not be permitted to execute, levy, or sell

Debtors' home.   I reject NOVA's second alternative argument, because it also is

48

controlled by the same legal conclusions discussed above.

49

# V.  <u>CONCLUSION</u>

I conclude that the Judgments, entered independently and separately, based upon the entirely separate and distinct Guaranties, do not constitute presently enforceable liens on Debtors' home, which is owned as tenants by the entirety.  I further conclude that nothing in the Judgments, the Guaranties, or any other loan documents in this matter provides any indication whatsoever that Debtors intended to surrender to NOVA the protection that owning their home a tenants by the entirety affords them.

Upon the findings of fact, conclusions of law, and discussion in this Memorandum Opinion, therefore, I enter the accompanying Order (1) denying NOVA's motion for reconsideration on the substance and merits and (2) ratifying, restating, and re-entering my Orders dated August 29, 2011, granting Debtors' Motions To Avoid.

BY THE COURT

Date: December 13, 2011

RICHARD E. FEHLING
United States Bankruptcy Judge

50